IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| UNITED STATES OF AMERICA | ) |
| :--- | :--- |
| Plaintiff, | ) ) ) |
| v. | ) Criminal Action No. 13-40-GMS |
| ROBERT WARD, | ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM OPINION**

### I. INTRODUCTION

On April 11, 2013, defendant Robert Ward ("Ward") was indicted by a grand jury for being a felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Ward filed this motion seeking to dismiss the one-count indictment on the ground that he is not a convicted felon for the purpose of § 922(g)(1), as defined by federal statute § 921(a)(20). (D.I. 15.) The issue presented by Ward's motion is whether his civil rights had been restored at the time Ward was indicted. Should the court find his rights had been restored, Ward would no longer be considered a person prohibited under the federal statute, and the indictment should be dismissed. Ward contends that his rights were restored upon completing his felony conviction sentence. The prosecution ("the government") argues that Ward's civil rights have not yet been fully restored, and therefore the indictment should stand.

For the reasons that follow, the court will deny Ward's motion to dismiss the indictment.

## II. BACKGROUND

In 2001, Ward was convicted under Delaware law for Fourth Offense Driving Under the Influence.[1] This offense was a felony conviction, punishable by more than a year in prison. 21 Del. C. § 4177(d)(4). The parties do not dispute that, between his 2001 felony conviction and the time of his arrest, Ward completed his sentence.

On April 11, 2013, a grand jury returned a one-count indictment charging that Ward "did knowingly possess in and affecting interstate and foreign commerce, firearms and ammunition," in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (D.I. 2.) On September 20, 2013, Ward filed this motion to dismiss the indictment on the grounds that § 922(g)(1) does not apply.[2]

## III. DISCUSSION

18 U.S.C. § 922(g)(1) criminalizes the possession of a firearm by an individual "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." § 922(g)(1). Section 921(a)(20) provides, however, that a conviction for a "crime punishable by imprisonment for a term exceeding one year" does not include "[a]ny . . . for which a person has been pardoned or *has had civil rights restored*." § 921(a)(20) (emphasis added). Thus, in this case, determination of whether civil rights have been "restored" is critical.

While § 921 offers no further guidance as to which civil rights must be restored, the Third Circuit has identified the "core civil rights" at issue as (1) the right to vote, (2) the right to hold public office, and (2) the right to sit on a jury. *United States v. Leuschen*, 395 F.3d 155, 159–60 (3d Cir. 2005). A convict must possess *each* of these core civil rights in order to have his federal

---

[1] "Whoever is convicted of a violation of [driving under the influence] shall...[f]or a fourth or subsequent offense occurring any time after 3 prior offenses, be guilty of a class E felony, be fined not less than $2,000 nor more than $6,000 and imprisoned not less than 2 years nor more than 5 years." 21 Del. C. § 4177(d)(4).

[2] 18 U.S.C. § 924(a)(2) simply outlines the penalties for violating § 922 and therefore only applies if § 922 applies. The court omits further references to § 924 in its discussion.

2

firearms rights restored as well. *Id.* (citing *United States v. Essig*, 10 F.3d 968, 975–76 (3d Cir. 1993)).

The forfeiture and restoration of these core civil rights are governed by state law—in this case Delaware law. A felony conviction of any type results in the forfeiture of both the right to vote and the right to sit on a jury. Del. Const. art. V, § 2 ("[T]he General Assembly may impose the forfeiture of the right of suffrage as a punishment for crime."); 15 Del. C. § 1701 ("No . . . person convicted of a crime deemed by law a felony . . . shall be a qualified voter."); 10 Del. C. § 4509(b)(6) ("All persons are qualified for jury service except those who are: . . . Convicted felons who have not had their civil rights restored."). In contrast, forfeiture of one's right to hold public office is limited to a defined category of convicted felons. Del. Const. art. II, § 21 ("No person who shall be convicted of embezzlement of the public money, bribery, perjury or other infamous crime, shall be eligible to a seat in either House of the General Assembly, or capable of holding any office of trust, honor or profit under this State.") In this case, the government does not argue that Ward's predicate felony conviction constituted an "infamous crime" such that his right to hold public office was lost. The court therefore focuses on the right to vote and the right to serve on a jury.

The restoration of a felon's right to vote is specifically provided for in the Delaware Constitution: "Any person who is disqualified as a voter because of a conviction of a crime deemed by law a felony shall have such disqualification removed upon being pardoned, or after the expiration of the sentence, whichever may first occur." Del. Const. art. V, § 2. There is no dispute that Ward has served his sentence for his 2001 felony conviction, and therefore his right to vote was restored. Rather, the crux of the parties' disagreement is whether Ward's right to serve on a jury has been restored.

3

Ward argues that section 4347(i) of Title 11 of the Delaware Code demonstrates that he had his right to sit on a jury restored. Section 4347(i) is part of Delaware's parole statute governing "Parole authority and procedure." 11 Del. C. 4347(i). Although parole was abolished in Delaware in 1989 for all crimes committed after June 29, 1990, Ward argues the following broad language remains in effect:

> When a person on parole or conditional release has performed the obligations of that person's release for such time as shall satisfy the Board that the person's final release is not incompatible with the best interest of society and the welfare of the individual, the Board may make a final order of discharge and issue a certificate of discharge to the person; but no such order of discharge shall be made within 1 year after the date of release except where the sentence expires earlier thereto. Such discharge, *and the discharge of a person who has served person's term of imprisonment, shall have the effect of restoring all civil rights lost by operation of law upon commitment.*

11 Del C. § 4347(i) (emphasis added). Ward contends that the "discharge of a person who has served person's term of imprisonment" refers to any incarcerated convict who has completed his sentence, and does not depend on parole. Therefore, the abolition of parole would not have affected this clause. Ward argues that the parole statutes, including section 4347(i), were never repealed, suggesting they must retain some effect for those who are not parolees. Moreover, Ward argues the final clause—"restoring all civil rights lost by operation of law upon commitment"— confirms that all civil rights are restored after serving the prison term.

The government identifies several apparent flaws in the defense's argument. First, the government points to the fact that this clause is confined to a parole statute that is largely unenforceable today, except for those sentenced prior to June 29, 1990.[3] Ward is not eligible for

---

[3] The government argues that Ward's inference that section 4347(i) must apply to him because the statute was never repealed is mistaken. Those convicted prior to June 29, 1990, are still eligible for parole.

4

parole (because he committed his crime in 2001), so, the government argues, he is not eligible for any restoration of rights provided by this statute. Second, to the extent Ward does have some rights restored, the government contends that "all civil rights lost by operation of law upon commitment" are not the same as the core civil rights identified by *Leuschen*, 395 F.3d at 159–60. The government argues that the right to sit on a jury (along with the other core rights) are forfeited upon felony *conviction*, not upon incarceration or commitment. The government produced an informal opinion from the Delaware Department of Justice which supports this view and draws a distinction between "rights commonly exercised in everyday life, that are lost by virtue of the fact of the parolee's commitment," and those "well-known and basic rights that are only forfeited by the fact of a conviction." (D.I. 20, Ex. A.) The government provides examples of the rights lost upon commitment (which are restored upon release), such as the right to free association, the right to have sexual relations, the right to eat palatable food, and simply the right to be at liberty. *See Gittlemacker v. Prasse*, 428 F.2d 1, 3 (3d Cir. 1970). These contrast with rights forfeited upon conviction, which are only restored where the law specifically provides. Finally, the government also identifies the Delaware statute concerning pardons, which has the effect of "fully restoring *all* civil rights," and specifically names the rights to vote, to serve on a jury, to possess a deadly weapon, and to seek public office. 11 Del. C. § 4364 (emphasis added). The difference between the language of the parole statute and the language of the pardon statute, the government argues, confirms that the parole statute was not intended to have the extensive effect suggested by Ward.

Although at first blush Ward's novel argument appears compelling, the court agrees with the government that, upon closer examination, the argument is fatally flawed. The court cannot accept Ward's position that the Delaware legislature would bury a sweeping, massively important provision with the effect of restoring *all* civil rights for *all* convicted felons within a lengthy,

5

several-decades-old parole statute. Ward's position becomes even more untenable in light of the fact that the Delaware Constitution has a specific clause providing for the restoration of felons' right to vote. Del. Const. art. V, § 2. In fact, the Delaware legislature recently amended this provision in 2013 to provide for the automatic restoration of the right to vote upon completion of a felon's sentence—previously there had been a five-year delay before the right could be restored. 2013 Del. Laws Ch. 34 (H.B. 10). A constitutional amendment like this would have been entirely unnecessary under Ward's interpretation of the parole statute. The court is convinced that Ward's reading of the parole statute is not so much a loophole as it is a strained and unwarranted revision.

Although it admits that section 4347(i) apparently has exceedingly broad and confusing language, the court is satisfied with the government's explanation, distinguishing between rights lost upon conviction versus those lost upon incarceration. The statute's emphasis on imprisonment further persuades the court that Ward's view cannot be correct. Sentences for felony convictions often do but need not incorporate terms of imprisonment; yet, under Ward's position, only those released from prison would have their rights restored. This cannot be the result contemplated by the Delaware legislature.

The court is receptive to Ward's argument that unless one goes through the statutory pardon process, the right to serve on a jury would effectively be permanently lost upon a felony conviction, 11 Del. C. § 4364. This result appears, however, to be the intent of the state legislature. The constitutional provision expressly restoring the right to vote confirms that the legislature knows how to restore certain rights and not others.[4] The court will not adopt a strained reading of Delaware law simply to make it easier to for defendants to have their rights restored.

---

[4] Indeed, the same provision of the Constitution restoring the vote for convicted felons also has carve-outs for specific classes of convicts: people convicted of murder or manslaughter, a felony offense against public

6

Because Ward has not had his right to serve on a jury restored, he does not possess the three core civil liberties outline by the Third Circuit. *See Leuschen*, 395 F.3d at 159–60. As such, he has been convicted of a "crime punishable by imprisonment for a term exceeding one year," as defined by § 921(a)(20), and is subject to the provisions of § 922(g)(1).

## IV. CONCLUSION

For the foregoing reasons, Ward's motion to dismiss the indictment (D.I. 15) is denied.

Dated: November 24, 2014

UNITED STATES DISTRICT JUDGE

---

administration involving bribery, improper influence or abuse of office, or a felony sexual offense. Del. Const. art. V, § 2. This level of attention bolsters the court's view that it should not upset the policy decisions that the legislature has made.